### BURCHARD v BURCHARD

Ohio Appeals, 9th Dist, Lorain Co

No 811.   Decided Jan 22, 1937

J. J. Smythe, Amherst, and Stetson & Butler, Elyria, for appellee.

Stevens & Stevens, Elyria, for appellant.

### OPINION

By FUNK, PJ.

Plaintiff (appellee) commenced her action in the Common Pleas Court of Lorain County against defendant (appellant) for divorce on the grounds of extreme cruelty and gross neglect of duty, and for alimony. The court below granted plaintiff a divorce on the ground of extreme cruelty, and awarded her alimony in the sum of $4,000 out of defendant's property.

The motion of the defendant for a new trial was overruled and the case is now in this court on appeal on questions of law.

The only error complained of is that the court, in fixing the amount of alimony awarded to plaintiff, erred in taking into consideration the testimony of defendant concerning the withdrawal by defendant of $4,915 from his several bank accounts over a period of years, and for which he was unable satisfactorily to account, and in finding that defendant "has moneys, securities or investments which he has failed to disclose to the court"; the claim being that the evidence does not justify such finding, and that "nothing more can be said for the unsatisfactory evidence upon which this finding is based than that it tends to create a suspicion"; that such finding entirely disregards the requirement of §11990, GC, which provides that:

"When a divorce is granted because of the husband's aggression, the court shall, if the wife so desires, * * * allow such alimony out of her husband's property as it deems reasonable, having due regard to * * * the value of his real and personal estate at the time of the divorce";

that there must be something more substantial than "suspicion" to constitute "her

husband's property," as that phrase is used in said §11990, GC, and that if the $4,915 relied upon by the trial court as concealed assets is taken out of the case, the amount of alimony awarded is grossly excessive and unfair, and against the manifest weight of the evidence; and that this is especially so when considered in connection with the amount of money plaintiff obtained from their joint bank accounts at the time of the discontinuance of their marital relations, and the fact that plaintiff owns the undivided one-half of 9¾ acres of land, which land is valued as a whole for tax purposes at $2,910, and is estimated by the several witnesses to be worth, as a whole, from about $5,000 to $10,000, the undivided one-half of which the court below found to be worth approximately $2,500; and the amounts defendant has paid by order of court since the commencement of this action to the doctor, the hospital, the attorney for plaintiff, and to plaintiff for alimony pending the suit.

We, of course, think that the trial court in a divorce action cannot award alimony to the wife out of "her husband's property" on a mere suspicion that he has such property, but we do not have that kind of a case before us.

The facts in the instant case are quite out of the ordinary.

It will be noted that in 1922 the defendant was charged with being the father of an illegitimate child born to a certain young woman, which charge the court below found to be true; that although the plaintiff refused to cohabit with defendant after she learned of that situation, the defendant continued to live at the home of plaintiff and her two children, one of which was about 14 years old, and the other one 24 years old at that time, until in the spring of 1936, during which time defendant paid plaintiff, for board and room, washing, ironing and darning, and the privilege of the home generally, an average of about $7.50 a week; that at the time of the separation in 1922 the accumulated funds of the parties in the various banks were divided between them, plaintiff getting something over one-half of the same on account of her supporting the minor child, the major portion of which funds plaintiff invested in the undivided one-half of said 9¾ acres of land; that their said son purchased the other undivided half of said land, which land, together with about 30 acres of land adjoining it, the mother and son rented and operated as a truck farm until the time of trial; that during these years, in addition to her housework, the mother also worked in the field along with the men until she became sick and physically unable to continue work in the field, since which time help is employed at her expense to assist her son in operating said truck farm; and that about the time of the commencement of this action, plaintiff's physical condition became such that she could do no work, and that it has since then been necessary to have some one to care for her all the time, and that the probability is that she will continue to require such care for the remainder of her natural life.

The record further shows that defendant was employed in a factory substantially all the time since 1922 at reasonably good wages, and that he contributed little, if anything, to the support of plaintiff all these years, except the amount paid for board, room, washing, ironing, darning, etc., as above stated, and that after plaintiff became seriously sick the defendant failed and refused to provide a doctor or hospitalization for plaintiff, and which care had to be provided by her children until defendant was required by order of the trial court to pay certain amounts to the doctor, the hospital, and her attorney, and to pay alimony pending the suit; that plaintiff is without money or property, except her one-half interest in said 9¾ acres, exclusive of buildings; that defendant is in good health and is now earning approximately $80 a month, and that his earnings were much more than that amount much of the time since 1922; that defendant now has at least $6086.45 in mortgages on real estate and money on deposit in banks; that there is $4915 which he withdrew from banks since 1922, and for which he is unable to account; and that the trial court further found that defendant "has money, securities or investments which he has failed to disclose to the court."

It is thus apparent from the record that defendant has at least $6,000 in money and securities, and that he is in good health and has a steady position where he is earning about $80 a month, while plaintiff is an invalid, without funds except said one-half interest in said 9¾ acres of bare land.

Furthermore, while the record discloses that defendant testified that he withdrew various amounts from different banks, aggregating $4915, and that he did not know what became of said money, and that the trial court came to the conclusion that defendant has "moneys, securities or investments" which he failed to disclose, the

# 382

record also shows that plaintiff furnished defendant all those 14 years with board, room, washing, ironing, darning, and the other comforts of a home, for the small sum of an average of approximately $7.50 a week, and that defendant had little, if any, responsibility for the family home all those years, and that plaintiff continued to so furnish said comforts to defendant until failing health overtook her and she became unable to do anything and is now required to have constant care and medical attention.

It thus appears from the record that defendant was assisted in accumulating the moneys, which he now admits having, by the plaintiff boarding him and furnishing him a home during said 14 years at the small expense of only $7.50 a week.

Moreover, the court in fixing the allowance of alimony had a right to take into consideration the probable further earnings of the defendant, and was not necessarily limited to a consideration of the property in possession of defendant at the time of the decree.

**Lape v Lape, 99 Oh St 143.**

The Lape case has never been reversed or modified by our Supreme Court and has been repeatedly followed by the Court of Appeals of Ohio as the law of this state.

But, regardless of the right of the trial court under the holding in the Lape case, was said award of alimony so grossly excessive as to be manifestly against the weight of the evidence under all the facts and circumstances as shown by the record in the instant case, even though said award was approximately two-thirds of the assets the defendant admitted he had at the time of the trial?

Even though from a mere reading of the record we might not agree in all particulars with the trial court, which saw the witnesses on the stand and which we do not have the opportunity of doing, we cannot, under the rules governing reviewing courts, say that the judgment and order of the trial court are either manifestly against the weight of the evidence or grossly excessive.

The judgment will therefore be affirmed.

STEVENS and WASHBURN, JJ, concur in judgment.